UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NEOCHEM INCORPORATED; aka | § | |
| NEOCHEM CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-681 |
| | § | |
| SOJITZ CORPORATION OF AMERICA; fka | § | |
| NICHIMEN AMERICA, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Neochem Incorporated's ("Neochem") Memorandum in Support of Motion for Partial Summary Judgment on liability (Doc. 65), as well as Defendant Sojitz Corporation of America's ("Sojitz") responses (Docs. 68 and 80), Neochem's reply (Doc. 81) and addendum (Doc. 82). Upon review and consideration of this motion, the responses and replies thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Neochem's motion should be granted.

I. Background and Relevant Facts

This is a breach of contract case in federal court pursuant to diversity jurisdiction. On November 29, 2000, Neochem and Sojitz (formerly known as Nichimen America, Inc.) signed a two-page written contract. (Docs. 20-2 and 20-3.) The contract provides that Sojitz would be the sole importer and North American distributor of 95% pure Diisobutylene ("DIB") produced by Maruzen Petrochemical Co. Ltd. ("Maruzen"), with the exception of two other companies. (*Id.*) Sojitz further promised to provide Neochem up to 8,500 metric tons of Maruzen's 95% pure DIB in 2001 and for each calendar year thereafter until one party gave written notice 180 days before the end of each calendar year. (*Id.*) Neochem claims that the following amounts of

1 / 8

DIB were provided by the Defendants:

    2004 – 6498 metric tons

    2005 – 7114 metric tons

    2006 – 7520 metric tons

    2007 – 6970 metric tons

    2008 – 1000 metric tons

    2009 – 0 metric tons

(*Id.* ¶ 10.) Neochem alleges that it performed its obligations under the contract, but that in 2008 Sojitz breached the contract by failing to provide the quantity of DIB promised. (*Id.* at ¶ 8.) Specifically, Neochem claims that "after Sojitz's last shipment in February of 2008, no notice of termination was ever provided to Neochem by Sojitz pursuant to paragraphs 4 and 5 of the 2000 Contract until July 23, 2010, which was more than a year after Neochem filed suit." (Doc. 65 at 4.)

In a letter dated April 8, 2008, approximately two months after Neochem received its last order of DIB, Sojitz notified Neochem that, as of March 31, 2008, only 453 metric tons of Maruzen DIB remained for Neochem. (Doc. 65 at 4.) Sojitz also informed Neochem that the remaining DIB might be sold out sometime in late April 2008. (*Id.* at 4.) Neochem states that rather than terminate the contract, in March of 2009, Sojitz actually reaffirmed the existence of the 2000 Contract. (*See* Exhibit 6 to Doc. 65.) As a result of the alleged breach, Neochem claims that it suffered harm to its "reputation and standing resulting in a loss of business." (Doc. 20 at ¶ 13.) Neochem seeks lost profits, attorneys' fees, and costs. (*Id.* at ¶ 18.)

On February 9, 2009, Neochem filed suit in the 127th Judicial District Court of Harris County, Texas, in cause number 2009-07880. (Doc. 1-2 at 5.) On March 9, 2009, Sojitz

removed the case to this Court on the basis of diversity jurisdiction. (*Id.* at 1.) On September 20, 2010, Defendant Maruzen was dismissed from the case. (Doc. 64.) Plaintiff Neochem now moves for summary judgment. (Doc. 65.)

II. Standard of Review

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, however, the nonmovant must direct the court's

attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the nonmoving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998) (overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006)). The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert. denied*, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th

Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

III. Discussion

In Texas, the necessary elements of a contract are (1) offer, (2) acceptance, (3) meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods. Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, *pet. denied*). To determine whether there was an offer and acceptance, and therefore a "meeting of the minds," courts use an objective standard, considering what the parties did and said, not their subjective states of mind. *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008). Here, a written contract ("the 2000 Contract") was signed by Neochem and Sojitz in November 2000. (Docs. 40-5 and 40-6.) Both parties performed their contractual obligations for several years until Defendant Sojitz stopped shipping Maruzen DIB to Plaintiff Neochem in February 2008. The express contract combined with a course of conduct suggest the parties' intent to be bound by the 2000 Contract.

A contract must also provide valid consideration. *Texas Gas Utilities Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970). Consideration is a bargained for exchange of promises that consists of benefits and detriments to the contracting parties. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). Sojitz contends that the 2000 Contract fails for lack of consideration because Neochem was not obligated to do anything under the agreement. However, the evidence shows that Sojitz agreed to make available to Neochem 8,500 metric tons of Maruzen 95% DIB annually in an evergreen contract. (Docs. 40-5 and 40-6.) In accordance with the contract, Neochem contends it relinquished its inventory, storage tanks, and position as the exclusive importer of Maruzen DIB in North America. (Doc. 81 at 2.) This exchange of promises constitutes sufficient consideration to create a binding contract.

To support a breach of contract claim, Neochem must plead (1) the existence of a valid, enforceable contract; (2) privity between the parties; (3) performance or tendered performance by the plaintiff; (4) breach of the contract by the defendant; and (5) injury to the plaintiff as a result of the breach. *Valero Mktg. & Sup. Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 1995, *no writ*). In support of the first three elements, the existence of a valid, enforceable contract, privity between the parties, and performance by the plaintiff, Neochem contends that both Sojitz and Neochem signed the 2000 Contract and that both parties performed their obligations until Sojitz breached in February 2008 by failing to provide the agreed upon quantity of Maruzen DIB. (Doc. 65 at 3.) In support of the fourth element, breach of the contract by the defendant, Sojitz concedes that it did not make the agreed upon quantity of Maruzen DIB available in 2008 or 2009. (Doc. 6 at ¶ 10.) When a party fails to deliver the goods as promised, a breach occurs. *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 897 (Tex. App. 2002). In support of the fifth element, Plaintiff Neochem argues it suffered lost business, harm to its reputation, and lost profits as a result of Sojitz's breach. (Doc. 20 at ¶¶ 13 and 18.)

Sojitz responds that its breach should be excused due to impossibility. (Doc. 68 at 7.) Specifically, Sojitz argues there was an unforeseeable cessation of Maruzen DIB supply due to an explosion at Maruzen's parent company's refinery. (*Id.* at 5.) As a result of the explosion, sanctions were imposed, including annual maintenance obligations, which required operations at Maruzen to be shutdown for two months annually. (*Id.* at 4.) Sojitz states that "Maruzen had its own maintenance obligations that caused its plant to shutdown for about two months every other year, causing an interruption in production in the years 2006, 2008, and 2010." (*Id.*) Sojitz argues that these interruptions in production, along with increased demand from Maruzen's

customers in Asia, decreased the amount of DIB Maruzen was able to supply to the United States. (Doc. 68 at 7.)

Impossibility is defined as "that which, in the Constitution and course of nature or the law, no person can do or perform." Black's Law Dictionary 755 (6th ed. 1990). Impossibility of performance relieves a party to a contract of its duties when "performance has become impossible or totally impracticable (through no fault of the party)." *Id.* In order for impossibility to excuse performance, it must have been physically impossible for the party to perform. *United Sales Co. v. Curtis Peanut Co.*, 302 S.W.2d 763, 766 (Tex. Civ. App.—Dallas 1957, *writ ref'd n.r.e.*). Merely showing that events occurring after the contract was created made it impossible to obtain a commodity contracted for from a source contemplated by the parties is not enough to prove impossibility where the contract does not specify that the commodity must be obtained from that specific source. (*Id.*) This holds true even if it would have been more expensive to obtain the commodity elsewhere. (*Id.*) Under Texas law, then, impossibility defenses generally fail when the 'probability' of the unanticipated occurrence was known to the party seeking relief before contracting. *Centex Corp. v. Dalton*, 840 S.W.2d 952, 954 (Tex. 1992).

Defendant Sojitz argues that it made reasonable efforts to obtain Maruzen DIB. (Doc. 68 at 9.) However, Sojitz fails to show that it attempted to secure DIB for Neochem from sources other than Maruzen. (*Id.*) Although Sojitz contends that Maruzen's maintenance obligations caused the plant to close for two months in 2006 resulting in a supply shortage, Sojitz was able to provide the largest quantity of DIB it had ever provided to Neochem (7,520 metric tons) that same year. (Doc. 20 at ¶ 10.) Alternately, instead of securing a reasonable substitute for Maruzen DIB, Sojitz could have exercised its termination rights to end the contract once it realized it could no longer perform its contractual obligations. "Generally, impracticability

excuses a party's breach of contract when the contract itself doesn't provide an escape clause and the doctrine's other requirements are satisfied." *Tractebel Energy Mktg., Inc. v. E.I. Du Pont De Nemours & Co.*, 118 S.W.3d 60, 66 *opinion supplemented on overruling of reh'g*, 118 S.W.3d 929 (Tex. App.—Houston [14th Dist.] 2003, *no pet.*).

IV. Conclusion

Accordingly, the Court hereby **ORDERS** that Plaintiff Neochem Incorporated's Memorandum in Support of Motion for Partial Summary Judgment (Doc. 65) is **GRANTED**.

The Court further **ORDERS** that Neochem brief the issue of damages within thirty (30) days.

The Court further **ORDERS** that Defendant Sojitz Corporation of America's counterclaim (Doc. 6) is **DISMISSED**.

SIGNED at Houston, Texas, this 28th day of June, 2011.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE